2013V02463
ESW/gr

PAUL J. FISHMAN
United States Attorney
By: EVAN S. WEITZ
Assistant United States Attorney
970 Broad Street, Suite 700
Newark, New Jersey 07102
Tel: 973.645.2740
evan.weitz@usdoj.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | | **Honorable** |
| **Plaintiff,** | : | |
| | | **Civil Action No. 13-** |
| - v.- | : | |
| | | |
| **A TOTAL OF $422,959.27 IN** | : | |
| **UNITED STATES CURRENCY** | | **VERIFIED COMPLAINT FOR** |
| **COMPRISED OF:** | : | **FORFEITURE *IN REM*** |
| | | |
| **$62,910.96 PREVIOUSLY** | : | |
| **CONTAINED IN JP MORGAN** | | |
| **CHASE PERSONAL SAVINGS** | : | |
| **ACCOUNT NUMBER 990277923** | | |
| **IN THE NAME OF JUAN LARINO** | : | |
| **AND DILCI SANTANA;** | | |
| | : | |
| **$258,346.63 PREVIOUSLY** | | |
| **CONTAINED IN JP MORGAN** | : | |
| **CHASE PERSONAL SAVINGS** | | |
| **ACCOUNT NUMBER 3011044889** | : | |
| **IN THE NAME OF DILCI** | | |
| **SANTANA;** | : | |
| | | |
| **$20,695.97 PREVIOUSLY** | : | |
| **CONTAINED IN JP MORGAN** | | |
| **CHASE BUSINESS CHECKING** | : | |
| **ACCOUNT NUMBER 111782750** | | |
| **IN THE NAME OF LARINO** | : | |
| **MASONRY INC;** | | |

**$1,475.12 PREVIOUSLY**　　　　:
**CONTAINED IN JP MORGAN**
**CHASE PERSONAL CHECKING**　　:
**ACCOUNT NUMBER 111809500**
**IN THE NAME OF JUAN LARINO;**　:

**$79,530.59 PREVIOUSLY**　　　　:
**CONTAINED IN TRADESTATION**
**SECURITIES BROKERAGE**　　　　:
**ACCOUNT NUMBER 17406026**
**IN THE NAME OF JUAN LARINO**　:
**AND DILCI SANTANA;**

　　　　　　　　　　　　　　　　:

**AND**

　　　　　　　　　　　　　　　　:

**ONE 2006 SABRE YACHT,**
**HULL IDENTIFICATION NUMBER**　:
**HWSX8038C606,**

　　　　　　　　　　　　　　　　:

　　　　**Defendants *in rem.***

Plaintiff, United States of America, by its attorney, Paul J. Fishman,

United States Attorney for the District of New Jersey (by Evan S. Weitz,

Assistant United States Attorney) brings this Verified Complaint for Forfeiture

*In Rem* and alleges as follows in accordance with Rule G(2) of the Supplemental

Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal

Rules of Civil Procedure.

## NATURE OF THE ACTION

1.　　　This is a civil action *in rem* to forfeit and condemn to the use and

benefit of the United States the above-captioned defendant property, pursuant

to 31 U.S.C. § 5317, as property involved in a violation or violations of 31

U.S.C. § 5324, or a conspiracy to commit any such violations, and/or as

property traceable to any such violation or conspiracy.

## THE DEFENDANTS *IN REM*

2.    The defendant property consists of: (a) a total of $422,959.27 in United States currency comprised of $62,910.96 previously contained in JP Morgan Chase personal savings account number 990277923 in the name of Juan Larino and Dilci Santana ("Chase account 7923"); $258,346.63 previously contained in JP Morgan Chase personal savings account number 3011044889 in the name of Dilci Santana ("Chase account 4889"); $20,695.97 previously contained in JP Morgan Chase business checking account number 111782750 in the name of Larino Masonry Inc. ("Chase account 2750"); $1,475.12 previously contained in JP Morgan Chase personal checking account number 111809500 in the name of Juan Larino ("Chase account 9500"); and $79,530.59 previously contained in TradeStation Securities brokerage account number 17406026 in the name of Juan Larino and Dilci Santana ("TradeStation account 6026"); and (b) one 2006 Sabre Yacht, Hull Identification Number HWSX8038C606 ("Sabre Yacht"); (collectively the "defendant property"). The defendant property is currently in the custody of the United States.

## JURISDICTION AND VENUE

3.    Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

3

4.      This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b)(1).  Upon the filing of this Verified Complaint, plaintiff requests that the Clerk of the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1395.

**BASIS FOR FORFEITURE**

6.      The defendant property is subject to forfeiture pursuant to the provisions of 31 U.S.C. § 5317(c)(2), which subjects to forfeiture to the United States any property involved in, or traceable to, a violation of 31 U.S.C. § 5324.

**STATUTORY BACKGROUND**

7.      Pursuant to 31 U.S.C. § 5313(a) and its related regulations, when a domestic financial institution, including banks and money service businesses, is involved in a transaction for the payment, receipt, or transfer of United States currency in an amount greater than $10,000.00, the institution is required to file a currency transaction report ("CTR") for each cash transaction, such as, by way of example, a deposit, withdrawal, exchange of currency, or other payment or transfer by, through, or to a financial institution.

8.      CTR forms, which are filed with the Internal Revenue Service, require disclosure of, among other information, the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

4

9.    Many individuals involved in illegal activities, such as narcotics trafficking, tax evasion, and money laundering, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs in order to avoid detection of the movement of large amounts of United States currency or "cash." These active steps are often referred to as "structuring" and involve making multiple cash deposits or withdrawals in amounts of $10,000.00 or less on the same day or consecutive days in order to avoid the filing of CTRs. Structuring transactions to avoid the filing of a CTR is prohibited by 31 U.S.C. § 5324(a)(3).

10.    Pursuant to 31 U.S.C. § 5324, it is a crime for an individual to (a) "cause or attempt to cause a domestic financial institution to fail to file a report required under § 5313(a)," (b) "cause or attempt to cause a domestic financial institution to file a report required under § 5313(a) that contains a material omission or misstatement of fact," or (c) "structure or assist in structuring, any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a).

11.    Furthermore, 31 U.S.C. § 5317 provides for the forfeiture of any property involved in a violation of 31 U.S.C. § 5324, or any conspiracy to commit any such violation, and any property traceable to any such violation or conspiracy.

12.    In any forfeiture action in which the subject property is United States currency deposited into a bank account, the government is not required to identify the particular funds involved in the offense, as any funds found in

5

the same account within one year of the date of the offense are subject to forfeiture pursuant to 18 U.S.C. § 984.

## FACTS

13.     Juan Larino ("Larino") and Dilci Santana ("Santana") reside together in West New York, New Jersey. Larino is the owner of Larino Masonry and Santana is listed as an office clerk.

14.     During the period between on or about July 7, 2010, through on or about March 21, 2013, there were approximately 109 structured United States currency deposits, totaling approximately $893,948, made into accounts controlled by Larino and Santana.  All of the currency deposits were made at New Jersey branches of Bank of America and JP Morgan Chase, and into the following 6 bank accounts:

    a.     Bank of America personal checking account number 9493491303 ("Bank of America account 1303") which was held in the name of Larino and Santana, and closed on or about December 12, 2011;

    b.     Bank of America personal savings account number 381004771038 ("Bank of America account 1038") which was held in the name of Dilci McGuire, aka Dilci Santana, and closed on or about December 12, 2011;

    c.     Chase account 7923;

    d.     Chase account 4889;

    e.     Chase account 2750;

    f.     Chase account 9500.

15.     All of the deposits were in amounts of less than $10,000.01, the amount that would have triggered the filing of a CTR, and many of the deposits

6

were made on the same day or on consecutive business days. While none of the deposits during this period of time were in an amount in excess of $10,000.00, there were a number of instances where deposits were made on the same or subsequent business day and their total exceeded $10,000.00. Attached as "Attachment A" to this complaint and incorporated herein, is a spreadsheet outlining the structured currency deposits and transfers made into the bank accounts listed in paragraph 14.

16.     For instance, during a one week period, starting on August 24, 2012, nine structured currency deposits totaling $88,400 were made into three of the bank accounts identified in paragraph 14. Notably, not a single currency deposit during that period exceeded $10,000.00, the amount that would have triggered the filing of a CTR, and all of the deposits were in the amounts of $9,900, $9,800 or $9,400. Additionally, between August and November of 2011, approximately 55 structured currency deposits were made into the accounts described above in paragraph 14. All of these were in amounts of less than $10,000.00. Moreover, the majority of these cash deposits were made in amounts of either $9,800 or $9,900 and were made via multiple deposits per week or over consecutive days.

17.     Key Bank loan account number 3211024923637 in the amount of $485,515 was a preferred boat loan held in the name of Juan Larino and his wife Maria Larino (the "Boat Loan"). The Boat Loan was used to purchase a 2008 Sabre Yacht, Hull Identification Number HWSX8072B808 (the "2008 Yacht"). As discussed below, payments towards the Boat Loan were made from

7

the accounts described in paragraph 14. After the Boat Loan was satisfied, the 2008 Yacht was destroyed by fire. The insurance proceeds from the 2008 Yacht were then used to purchase the Sabre Yacht.

18.    Larino and Santana also controlled TradeStation Securities brokerage account 17400605 ( the "TradeStation account 0605"). Upon the closure of TradeStation account 0605, the funds contained in the account were transferred to the TradeStation account 6026.

19.    During the period from on or about July 7, 2010 through on or about November 23, 2011, 66 structured currency deposits totaling $610,930 in United States currency were made into Bank of America account 1303, which was subsequently closed on or about December 12, 2011. As discussed below, much of the structured funds in this account were transferred to other accounts described above.

20.    During the period from on or about March 31, 2011 through on or about November 25, 2011, eight structured currency deposits totaling $46,600 in United States currency were made into Bank of America account 1038, which was also subsequently closed on or about December 12, 2011. During this time three transfers totaling $25,900 were made into Bank of America account 1303 from Bank of America account 1038. As discussed below, much of the remaining structured funds in this account were transferred to other accounts described above.

8

**The Sabre Yacht:**

21.     On or about April 18, 2008, Juan and Maria Larino, received the Boat Loan in the amount of $485,515, which was used to purchase the 2008 Yacht. As indicated in Attachment A, from on or about September 28, 2011 through on or about November 28, 2011, nine transfers via check or wire totaling $442,200 of structured funds were conducted from Bank of America account 1303 and applied to the Boat Loan. Therefore, at least $442,200 of the value of the 2008 Yacht was acquired with structured funds. This Boat Loan was ultimately satisfied on or around December 9, 2011.

22.     On or about February 18, 2013, the 2008 Yacht was destroyed by fire at the Lincoln Harbor Yacht Club in Weehawken, New Jersey. On or about April 8, 2013, $606,000 in insurance proceeds received from XL Specialty Insurance for the 2008 Yacht was deposited into Chase account 7923. Accordingly, of the $606,000 amount deposited into the Chase account 7923 for the loss of the 2008 Yacht, $442,200 is traceable to structured funds used to pay down the Boat Loan on the 2008 Yacht.

23.     As indicated in Attachment A, between on or about March 6, 2013 and on or about April 9, 2013, wire transfers in the amount of $338,870 were conducted from Chase account 7923 to Galati Yacht Sales for the purchase of the Sabre Yacht. As discussed above, on or about April 8, 2013, Chase account 7923 received the proceeds of the insurance policy on the 2008 Yacht.

**The Seized Accounts:**

24.    On or about December 16, 2011, a Bank of America Official Check in the amount of $20,092.96 drawn off Bank of America account 1303 was deposited into Chase account 7923.  In addition, Chase account 7923 received structured cash deposits totaling $156,618; $606,000 from XL Specialty Insurance for the loss of the 2008 Yacht, of which $442,200 represents structured funds applied to loan payments described above; and a $4,000 transfer of structured funds from Chase account 2750.  Some of the structured funds were withdrawn from the Chase account 7923, namely two transfers traceable to structured funds totaling $13,000 to TradeStation account 0605; three transfers traceable to structured funds totaling $320,000 to Galati Yacht Sales for the purchase of the Sabre Yacht; and three transfers totaling $227,000 traceable to structured funds to other accounts discussed in paragraph 14.  This activity resulted in a balance of $62,910.96 of the remaining structured funds deposited and transferred in Chase account 7923.

25.    On or about December 16, 2011, a Bank of America Official Check in the amount of $20,092.96, drawn off Bank of America account 1303, was deposited into Chase account 4889.  Additionally, Chase account 4889 received structured cash deposits totaling $11,100, and, as noted above, three transfers totaling $227,000 traceable to structured funds from Chase account 7923.  This activity resulted in a balance of $258,346.63 of structured funds deposited and transferred in Chase account 4889.

10

26.     During the period from on or about April 28, 2011 through on or about August 24, 2012, 10 transfers via check or wire totaling $82,800 of structured funds were conducted from Bank of America account 1303, and two transfers via check or wire totaling $13,000 of structured funds were conducted from the Chase account 7923 into TradeStation account 0605. In total, $95,800 of structured funds were transferred to TradeStation account 0605. Between on or about October 24, 2012 and on or about January 31, 2013, four transfers totaling $31,868 were conducted from TradeStation account 0605 into TradeStation account 6026. At the time of seizure, no additional outside funds had been deposited into TradeStation account 0605 or TradeStation account 6026. Therefore, all funds in the account represent structured funds, including any unrealized gains and/or account appreciation which were attributed to the investment of structured funds.

27.     During the period from on or about August 24, 2012 through on or about August 28, 2012, four structured currency deposits totaling $39,500 in United States currency were made into Chase account 2750. On or about August 31, 2012, $4,000 was transferred from the Chase account 2750 to Chase account 7923. This activity left a balance of $35,500 of structured funds remaining in the Chase account 2750.

28.     During the period from on or about August 24, 2012 through on or about August 27, 2012, three structured currency deposits totaling $29,200 in United States currency were made into Chase account 9500.

**The Seizure:**

29.     On May 31, 2013, seizure warrants were issued by the Honorable

Madeline Cox Arleo, United States Magistrate Judge, for the District of New

Jersey, for the seizure of:

> A. All funds and monies up to $62,910.96 contained in JP Morgan
> Chase personal savings account 990277923 in the name of Juan
> Larino and Dilci Santana;
>
> B. All funds and monies up to $258,346.63 contained in JP Morgan
> Chase personal savings account 3011044889 in the name of Dilci
> Santana;
>
> C. All funds and monies up to $35,500 contained in JP Morgan Chase
> Bank business checking account number 111782750 in the name
> of Larino Masonry Inc;
>
> D. All funds and monies up to $29,200 contained in JP Morgan Chase
> personal checking account 111809500 in the name of Juan Larino;
>
> E. All funds and monies contained in TradeStation Securities
> brokerage account number 17406026 in the name of Juan Larino
> and Dilci Santana; and
>
> F. One 2006 Sabre Yacht, Hull Identification Number
> HWSX8038C606.

30.     On May 31, 2013 and June 3, 2013, agents of Internal Revenue

Service-Criminal Investigation ("IRS-CI") executed the above-referenced seizure

warrants resulting in the seizure of the defendant property, namely:

> A. $62,910.96 contained in JP Morgan Chase personal savings
> account number 990277923 in the name of Juan Larino and
> Dilci Santana;
>
> B. $258,346.63 contained in JP Morgan Chase personal savings
> account number 3011044889 in the name of Dilci Santana;
>
> C. $20,695.97 contained in JP Morgan Chase business
> checking account number 111782750 in the name of Larino
> Masonry Inc.;

12

D. $1,475.12 contained in JP Morgan Chase personal checking account number 111809500 in the name of Juan Larino;

E. $79,530.59 contained in TradeStation Securities brokerage account number 17406026 in the name of Juan Larino and Dilci Santana; and

F. One 2006 Sabre Yacht, Hull Identification Number HWSX8038C606.

31.     On June 3, 2013, Larino was interviewed by Federal Investigators regarding his unusual banking activity. During the interview Larino stated that he is the owner of Larino Masonry, Inc. and has been in business for roughly 22 or 23 years. Larino told agents that his current business operation deals in subcontracting large masonry jobs to other vendors and currently he is the only employee of Larino Masonry.

32.     Larino advised he receives his salary by check from Larino Masonry and, with the exception of only a few instances of private jobs in the amount of $2,000-$3,000 each, he does not receive cash. Larino stated all of his past and current clients pay for his services by check. He does not cash those checks, but instead deposits them into the Larino Masonry business account.

33.     Larino told investigators he also owns three rental properties located in Newark, New Jersey, with a total of 20 rental units plus 3 rental units at his business' office building, resulting in a total of approximately $5,000 to $10,000 gross per month in cash transactions. Larino stated all of this cash is deposited in either business or personal accounts with Provident Bank and/or Chase Bank, which is then used to pay for the mortgages.

13

34.     During the interview Larino stated that he only banks with Provident Bank and Chase Bank.  When asked if he if he ever had bank accounts with Bank of America, Larino replied that only his live-in girlfriend, Dilci Santana, had Bank of America accounts and that he did not own any of these accounts.

35.     When Larino was asked if he was aware of roughly $900,000 in cash being deposited into the accounts he and/or Santana controlled since 2010, Larino stated that he could explain the cash and that it was from nothing illegal.

36.     Investigators presented the schedule of structured deposits attached to this complaint as Attachment A to Larino, who then told investigators that the currency was his.  Larino further stated he has been receiving cash loans of approximately $1,000,000 from two friends from New York who he did not want to identify.  Larino stated he would call either friend as money was needed and he received between $10,000 and $100,000 in cash at any given time.  When asked why he would not deposit the cash received all at once, Larino responded he did not want to "ring any bells."  Larino stated that he had an outstanding loan balance of roughly $500,000, but he does not have any written agreements between him and these individuals, nor could he provide any terms or conditions regarding these loans.

37.     Larino stated he deposited the money into his bank accounts in a manner that "did not ring any bells" and used the money to pay off a boat loan of approximately $450,000 and a car loan of approximately $150,000.

14

Investigators asked Larino if he was aware of the source of the cash which was being loaned to him. Larino stated be believed the cash was from buildings and nothing illegal such as drugs, but that he never asked the two friends where the cash originated from that was being loaned to him.

38.     Later that same day, Larino met investigators at the Lincoln Harbor Club in Weehawken and removed his personal belongings from the Sabre Yacht. During this time, Larino stated that he initially thought the seizures pertained to a separate Department of Labor "prevailing wage" investigation.

## CLAIM FOR FORFEITURE

39.     The allegations contained in paragraphs 1 through 38 of this Verified Complaint for Forfeiture *In Rem* are incorporated herein and made part hereof.

40.     The defendant property, and all proceeds traceable thereto, were involved in or are traceable to transactions or attempted transactions that were structured with the intent to avoid transaction reporting requirements under federal law, in violation of 31 U.S.C. § 5324.

41.     As a result of the foregoing, the defendant property and all proceeds traceable thereto, are subject to condemnation and to forfeiture to the United States for its use, in accordance with 31 U.S.C. § 5317(c).

**WHEREFORE,** plaintiff requests that the Clerk of the Court issue a warrant for the arrest in rem and seizure of the defendant property; that notice of this action be given to all persons who reasonably appear to be potential

claimants in the defendant property; that the defendant property be forfeited and condemned to the United States of America; that plaintiff be awarded its costs and disbursements in this action; and that the Court award such other and further relief as it deems proper and just.

                                    PAUL J. FISHMAN
                                    United States Attorney


                                    By:  EVAN S. WEITZ
                                    Assistant United States Attorney

Dated: September 12th, 2013
            Newark, New Jersey

# SCHEDULE A

## Schedule A
### Juan Larino/Dilci Santana

Date of File 3/12/13

| Date | Bank of America Regular Checking 9493491353 Opened 5/25/2004 Closed 12/13/11 | Bank of America Savings Account 381004771035 Opened 6/25/07 Closed 12/13/11 | JP Morgan Chase Personal Checking 990277923 Opened 12/16/11 | JP Morgan Chase Personal Savings 3011044889 Opened 12/16/11 | JP Morgan Chase Business Checking 111782750 Opened 9/23/12 | JP Morgan Chase Personal Checking 111809500 Opened 9/23/12 | Key Bank Loan 3211024923637 Hull HWSX3072BS08 | TradeStation Securities Brokerage Account 17406008 Opened 4/13/11 closed | TradeStation Securities Brokerage Account 17406029 Opened 2/23/12 | Galati Yacht Sales 2006 Sabre Hull HWSX3203SC506 Sale Price $320,000 | Net Cash Activity |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Cash Deposits/(Transf Out) | Cash Deposits/(Transf Out) | Cash Deposits/(Transf Out) | Cash Deposits/(Transf Out) | Cash Deposits/(Transf Out) | Cash Deposits/(Transf Out) | Trade In/(Trade Out) | Trade In/(Trade Out) | Trade In/(Trade Out) | Trade In/(Trade Out) | Total Cash Deposits |
| Wednesday, July 07, 2010 | 9,990.00 | | | | | | | | | | 9,990.00 |
| Friday, July 09, 2010 | 9,960.00 | | | | | | | | | | 9,960.00 |
| Monday, July 12, 2010 | 9,980.00 | | | | | | | | | | 9,980.00 |
| Tuesday, July 13, 2010 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, July 14, 2010 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, July 14, 2010 | | | | | | | | | | | - |
| Wednesday, July 14, 2010 | | | | | | | | | | | - |
| Wednesday, March 23, 2011 | 4,800.00 a | | | | | | | | | | 4,800.00 |
| Thursday, March 24, 2011 | 6,100.00 a | | | | | | | | | | 6,100.00 |
| Thursday, March 31, 2011 | | 5,000.00 | | | | | | | | | 5,000.00 |
| Friday, April 15, 2011 | 8,000.00 a | | | | | | | | | | 8,000.00 |
| Friday, April 15, 2011 | 1,900.00 a | | | | | | | | | | 1,900.00 |
| Monday, April 18, 2011 | 8,000.00 a | | | | | | | | | | 8,000.00 |
| Monday, April 18, 2011 | 1,900.00 | (1,900.00) | | | | | | | | | - |
| Wednesday, April 27, 2011 | | 9,900.00 | | | | | | | | | 9,900.00 |
| Thursday, April 28, 2011 | 2,500.00 | | | | | | | | | | 2,500.00 |
| Thursday, April 28, 2011 | (30,000.00) | | | | | | | 30,000.00 | | | - |
| Monday, May 02, 2011 | 6,500.00 | | | | | | | | | | 6,500.00 |
| Tuesday, May 31, 2011 | | 5,200.00 | | | | | | | | | 5,200.00 |
| Tuesday, May 31, 2011 | 4,000.00 | (4,000.00) | | | | | | | | | - |
| Tuesday, May 31, 2011 | (4,000.00) | | | | | | | 4,000.00 | | | - |
| Thursday, June 16, 2011 | | 3,500.00 | | | | | | | | | 3,500.00 |
| Monday, July 11, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, July 12, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, July 13, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, July 13, 2011 | (3,000.00) | | | | | | | | 3,000.00 | | - |
| Wednesday, July 13, 2011 | (1,000.00) | | | | | | | | 1,000.00 | | - |
| Wednesday, July 27, 2011 | (10,000.00) | | | | | | | | 10,000.00 | | - |
| Monday, August 22, 2011 | (5,000.00) | | | | | | | | 5,000.00 | | - |
| Tuesday, August 23, 2011 | (5,000.00) | | | | | | | | 5,000.00 | | - |
| Friday, August 26, 2011 | | 4,500.00 | | | | | | | | | 4,500.00 |
| Wednesday, August 31, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Thursday, September 01, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, September 02, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, September 06, 2011 | 9,620.00 | | | | | | | | | | 9,620.00 |
| Wednesday, September 07, 2011 | 9,600.00 | | | | | | | | | | 9,600.00 |
| Thursday, September 08, 2011 | 9,500.00 | | | | | | | | | | 9,500.00 |
| Friday, September 09, 2011 | 9,620.00 | | | | | | | | | | 9,620.00 |
| Monday, September 12, 2011 | 5,200.00 | | | | | | | | | | 5,200.00 |
| Thursday, September 15, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, September 19, 2011 | 7,900.00 | | | | | | | | | | 7,900.00 |
| Monday, September 19, 2011 | 7,900.00 | | | | | | | | | | 7,900.00 |
| Wednesday, September 21, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, September 23, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, September 26, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, September 26, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, September 27, 2011 | 9,200.00 | | | | | | | | | | 9,200.00 |
| Wednesday, September 28, 2011 | 9,800.00 | | | | | | | | | | 9,800.00 |
| Wednesday, September 28, 2011 | (25,000.00) | | | | | | 25,000.00 | | | | - |
| Thursday, September 29, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, September 30, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, October 03, 2011 | 9,900.00 | 3,700.00 a | | | | | | | | | 13,600.00 |
| Tuesday, October 04, 2011 | 9,900.00 | Check 3249 Payable to Key Bank | | | | | | | | | 9,900.00 |
| Wednesday, October 05, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, October 05, 2011 | (65,000.00) | | | | | | 65,000.00 | | | | - |
| Thursday, October 06, 2011 | | 9,900.00 | | | | | | | | | 9,900.00 |
| Friday, October 07, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 11, 2011 | 9,100.00 a | | | | | | | | | | 9,100.00 |
| Tuesday, October 11, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 11, 2011 | 20,000.00 | (20,000.00) | | | | | | | | | - |
| Wednesday, October 12, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, October 12, 2011 | (50,000.00) | | | | | | 50,000.00 | | | | - |
| Thursday, October 13, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, October 14, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, October 17, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 18, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 18, 2011 | (45,000.00) | | | | | | 45,000.00 | | | | - |
| Wednesday, October 19, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Thursday, October 20, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |

**Schedule A**
**Juan Larino/Dilci Santana**

| | Juan Larino/Dilci McGuire (Santana) | Dilci McGuire (Santana) | Dilci Santana/Juan Larino | Dilci Santana | Larino Masonry Inc | Juan Larino | "Life is Good" YACHT | Juan Larino/Dilci F Santana | Juan Larino/Dilci F Santana | Sales Price $323,000 | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Opened 3/29/2004 Closed 12/12/11 | Opened 6/25/07 Closed 12/12/11 | Opened 12/16/11 | Opened 12/16/11 | Opened 8/23/12 | Opened 8/23/12 | Loan $460,515 Paid off 12/0/11 | Opened 4/19/11 closed | Opened 3/7/2012 | | Date of File 2/12/13 |
| transfer / e-ATM Deposits | **Bank of America** 9493491333 **Regular Checking** | **Bank of America** 381004771033 **Savings Account** | **JP Morgan Chase** 990277923 **Personal Checking** | **JP Morgan Chase** 3011044889 **Personal Savings** | **JP Morgan Chase** 111762760 **Business Checking** | **JP Morgan Chase** 111809500 **Personal Checking** | **Key Bank** Loan 3211024923637 Hull HWSX80739208 | **TradeStation Securities** 17400505 **Brokerage Account** | **TradeStation Securities** 17400026 **Brokerage Account** | **Galati Yacht Sales** 2006 Sabre Hull HWSX80339C606 | **Net Cash Activity** |
| | Cash Deposits/Transf Out | Cash Deposits/Transf Out | Cash Deposits/Transf Out | Cash Deposits/Transf Out | Cash Deposits/Transf Out | Cash Deposits/Transf Out | Trsnfr In/Trnsfr Out | Trnsfr In/Trnsfr Out | Trnsfr In/Trnsfr Out | Trnsfr In/Trnsfr Out | Total Cash Deposits |
| Friday, October 21, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, October 21, 2011 | (9,800.00) | | | | | | | | | | |
| Monday, October 24, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 25, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, October 25, 2011 | (45,000.00) | | | | | | 45,000.00 | | | | - |
| Wednesday, October 26, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Thursday, October 27, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, October 28, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, October 31, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, November 01, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, November 01, 2011 | (44,000.00) | | | | | | 44,000.00 | | | | - |
| Wednesday, November 02, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Thursday, November 03, 2011 | 9,900.00 | | | | | | | | | | 9,500.00 |
| Friday, November 04, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, November 07, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, November 08, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, November 03, 2011 | (63,000.00) | | | | | | 63,000.00 | | | | - |
| Wednesday, November 09, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Thursday, November 10, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Monday, November 14, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Tuesday, November 15, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Wednesday, November 16, 2011 | 9,800.00 | Official Check #3467237 Dated 12/11/11 | | | | | | | | | 9,800.00 |
| Wednesday, November 16, 2011 | (60,000.00) | | | | | | 60,000.00 | | | | - |
| Wednesday, November 16, 2011 | (10,000.00) | | | | | | | 10,000.00 | | | - |
| Wednesday, November 23, 2011 | 9,900.00 | | | | | | | | | | 9,900.00 |
| Friday, November 25, 2011 | | 4,900.00 | Official Check #3467236 Dated 12/11/11 Account Closed | | | | | | | | 4,900.00 |
| Monday, November 28, 2011 | (5,000.00) | | | | | | | 5,000.00 | | | - |
| Monday, November 28, 2011 | (19,200.00) | | | | | | 19,200.00 | | | | - |
| Friday, December 16, 2011 | (20,092.96) | | 20,092.96 | | | | | | | | - |
| Friday, December 16, 2011 | | (20,246.63) | 9,900.00 | 20,246.83 | | | | | | | 9,900.00 |
| Thursday, January 05, 2012 | | | 9,400.00 | 3,300.00 | | | | | | | 9,400.00 |
| Thursday, March 08, 2012 | | | (7,000.00) | | | | | 7,000.00 | | | 3,300.00 |
| Friday, May 11, 2012 | | | 5,000.00 | | | | | | | | 5,000.00 |
| Friday, May 25, 2012 | | | 9,900.00 | 900.00 | | | | | | | 10,800.00 |
| Tuesday, May 29, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Wednesday, May 30, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Thursday, May 31, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Friday, June 01, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Tuesday, June 05, 2012 | | | 5,200.00 | | | | | | | | 5,200.00 |
| Tuesday, June 05, 2012 | | | 5,000.00 | 1,000.00 | | | | | | | 6,000.00 |
| Wednesday, June 20, 2012 | | | 9,500.00 | | | | | | | | 9,500.00 |
| Friday, June 22, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Friday, June 22, 2012 | | | (6,000.00) | | | | | 6,000.00 | | | - |
| Friday, August 24, 2012 | | | | | 9,900.00 | 9,900.00 | | | | | 19,800.00 |
| Monday, August 27, 2012 | | | | | 9,900.00 | 9,900.00 | | | | | 19,800.00 |
| Tuesday, August 28, 2012 | | | | | 9,900.00 | 9,400.00 | | | | | 19,300.00 |
| Tuesday, August 28, 2012 | | | 9,800.00 | | 9,800.00 | | | | | | 19,600.00 |
| Thursday, August 30, 2012 | | | 9,900.00 | | | | | | | | 9,900.00 |
| Friday, August 31, 2012 | | | 4,000.00 | | (4,000.00) | | | | | | - |
| Monday, September 10, 2012 | | | | 1,500.00 | | | | | | | 1,500.00 |
| Thursday, September 27, 2012 | | | | 1,300.00 | | | | | | | 1,300.00 |
| Wednesday, October 24, 2012 | | | | | | | | (50,000.00) | 30,000.00 | | - |
| Monday, November 05, 2012 | | | | 1,500.00 | | | | | | | 1,500.00 |
| Monday, November 12, 2012 | | | | | | | | (10,000.00) | 10,000.00 | | - |
| Friday, January 04, 2013 | | | 7,000.00 | | | | | | | | 7,000.00 |
| Monday, January 07, 2013 | | | 6,000.00 | | | | | | | | 6,000.00 |
| Monday, January 14, 2013 | | | 3,000.00 | | | | | | | | 3,000.00 |
| Wednesday, January 16, 2013 | | | 3,100.00 | | | | | | | | 3,100.00 |
| Thursday, January 31, 2013 | | | | | | | | (16,847.32) | 16,847.32 | | - |
| Thursday, January 31, 2013 | | | | | | | | 24,979.32 | (24,979.32) | | - |
| Monday, February 25, 2013 | | | | 1,600.00 | | | | | | | 1,600.00 |
| Tuesday, March 05, 2013 | | | 3,600.00 | | | | | | | | 3,600.00 |
| Wednesday, March 06, 2013 | | | (20,000.00) | | | | Check #390012342 $600,000, 1/28/13 Payable to Juan Larino From XL Specialty Ins Co. | | | 20,000.00 | - |
| Thursday, March 07, 2013 | | | (12,000.00) | | | | | | | 12,000.00 | - |
| Wednesday, March 20, 2013 | | | 6,118.00 | | | | | | | | 6,118.00 |
| Thursday, March 21, 2013 | | | 2,500.00 | | | | | | | | 2,500.00 |
| Monday, April 08, 2013 | | | 442,200.00 | | | | (442,200.00) | | | | - |

**Schedule A**
**Juan Larino/Dilci Santana**



| transfer #ATM Deposits | Bank of America 3493491303 Regular Checking Cash Deposits/(Transf Out) | Bank of America 381004771038 Savings Account Cash Deposits/(Transf Out) | JP Morgan Chase 990277923 Personal Checking Cash Deposits/(Transf Out) | JP Morgan Chase 3211044829 Personal Savings Cash Deposits/(Transf Out) | JP Morgan Chase 111782760 Business Checking Cash Deposits/(Transf Out) | JP Morgan Chase 111809500 Personal Checking Cash Deposits/(Transf Out) | Key Bank Loan 3211024823837 Hull HWSX5077250506 Transf In/(Transf Out) | TradeStation Securities 17400605 Brokerage Account Transf In/(Transf Out) | TradeStation Securities 17400629 Brokerage Account Transf In/(Transf Out) | Galati Yacht Sales 2006 Sabre Hull HWSX2033C606 Transf In/(Transf Out) | Net Cash Activity Total Cash Deposits |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Tuesday, April 09, 2013 | | | (288,000.00) | | | | | | | 288,000.00 | - |
| Wednesday, April 10, 2013 | | | (27,000.00) | 27,000.00 | | | | | | | - |
| Wednesday, April 17, 2013 | | | (100,000.00) | 100,000.00 | | | | | | | - |
| Thursday, April 18, 2013 | | | (100,000.00) | 100,000.00 | | | | | | | - |
| | | | | | | | | | | | |
| $ cash deposits | $ 91,737.04 | $ 453.37 | $ 62,910.96 | $ 258,346.63 | $ 35,500.00 | $ 29,200.00 | $ - | $ 63,932.00 | $ 31,868.00 | $ 320,000.00 | $ 893,948.00 |
| # cash deposits | 66 | 8 | 21 | 7 | 4 | 3 | | 16 | 4 | 3 | 109 |
| # transfers | 23 | 4 | 11 | 4 | 1 | | 10 | | | | 76 |
| | CLOSED | CLOSED | | | | | | CLOSED | | | |
| $ cash deposits | $ 610,930.00 | $ 48,600.00 | 156,616.00 | $ 11,100.00 | 39,500.00 | 29,200.00 | | | | | 893,948 |
| $ transfers | $ (518,192.96) | $ (48,146.63) | (93,707.04) | 247,246.63 | (4,000.00) | $ - | $ - | $ 63,932.00 | $ 31,868.00 | $ 320,000.00 | - |

## <u>VERIFICATION</u>

STATE OF NEW JERSEY     :
        ss
COUNTY OF ESSEX         :

      I, Keith Cregan, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Internal Revenue Service-Criminal Investigation, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint for Forfeiture *In Rem* are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

      The sources of my information and the grounds of my belief include the official files and records of the United States, information supplied to me by other law enforcement officers, and my own investigation of this case.

      I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

By: Keith Cregan
Task Force Officer
Internal Revenue Service
Criminal Investigation

Sworn to and subscribed before me this 12th
day of September 2013, at Newark, New Jersey.

EVAN S. WEITZ, ESQ.
Attorney-at-Law of the State of New Jersey